UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

$96,822.00 IN U.S. CURRENCY,

Defendant.

Civil No. 06-2028 (DRD)

**OPINION AND ORDER**

**I. PROCEDURAL HISTORY**

Pending before the Court is the *United States' Motion For Summary Judgment And Memorandum Of Law In Support Thereof* (Docket No. 30), filed on December 22, 2009, along with the requisite supporting *Statement of Uncontested Material Facts in Support of the United States' Motion for Summary Judgment* (Docket No. 31).

In this motion, Plaintiff United States ("Plaintiff") argues that summary judgment should be granted in its favor as Claimant Jorge A. Colon-Solis ("Claimant") lacks both statutory and Article III standing. Specifically, Plaintiff asserts that, as Claimant has failed to comply with the strict requirement that he file a verified claim in the instant action, he lacks statutory standing in the instant case. Further, Plaintiff asserts that Claimant lacks Article III standing as he has failed to show that he possesses a colorable interest in Defendant $96,822 in U.S. Currency ("Defendant Property"). Plaintiff argues that, as Claimant only generally alleges that Defendant claims the monies belong to other persons and that Claimant was merely a nonowner custodian

without providing the identities of the persons to whom Defendant Property actually belongs, Claimant has failed the prerequisites for establishing Article III standing under the "possession with an explanation" rule.

In response to the motion to dismiss, Claimant filed a motion on January 11, 2010, entitled *Mr. Jorge A. Colon-Solis' Opposition to United States' Motion for Summary Judgment and Memorandum of Law in Support Thereof* (Docket No. 35), as well as the requisite *Opposing Statement of Material Facts* (Docket No. 41). In his opposition, Claimant argues that the Court should find that Claimant's failure to file a timely verified claim is excusable because he operated in good faith. Thus, Claimant argues, he meets the statutory standing requirement. Further, Claimant argues that he has a colorable interest in Defendant Property in that he had possession of Defendant Property prior to its mailing to Puerto Rico, and, further, that he himself had a stake in Defendant Property. Notably, although Claimant now states that "several citizens" lent him $22,000 of the seized $96,822 which constitutes Defendant Property, in direct contradiction to his previous testimony given under oath[1] he still does not specify exactly what

---

[1] In the Suppression Hearing held before Judge Perez Gimenez in the U.S. District Court for the District of Puerto Rico on August 15, 2007 in Criminal Case 05-0417, the following testimony was given by Claimant in the instant action:

        Q: How much money did you win?
        A: I betted $50,000 and I won the same amount, so $100,000.
        Q: And whose money was that that you were betting at

his stake in Defendant Property is his versus that of third parties.[2] Further, Claimant attempts to rectify his previous failure to file a verified claim to Defendant Property by attaching a *Supplemental Sworn Statement of Interest* (Docket No. 41-2) to his opposing statement of material facts.

On January 27, 2010, Plaintiff filed a motion entitled *United States' Reply to the Claimant's Opposition to the Government's Motion for Summary Judgment* (Docket No. 48). In this document, Plaintiff argues that the Court should not accept Claimant's untimely backdoor attempt to file his verified claim along with his statement of material facts. In support of this argument, Plaintiff

---

the Cotto fight that September 2005?
A: ***It was my money.***
(Transcript of 8/15/2007 Suppression Hearing in 05-0417, P 6-7)(emphasis ours).
As this same hearing, Claimant also testified as following:

> Q: And you state here to the Court that at that time
> you also told Mr. Fombellida that the money was yours;
> is that correct?
> A: Yes, correct.
> Q: Now, isn't it a fact, Mr. Colon Solis, that that is
> not correct; that what you told Mr. Fombellida was
> that the money belonged -- were belonging from several
> people, not your own, not your money but belonging to
> several people, isn't that a fact?
> A: No.

(Transcript of 8/15/2007 Suppression Hearing in 05-0417, P 19)(emphasis ours).

[2] The Court notes that, in the *Sworn Statements* (Docket No. 41-3) offered by the persons who allegedly lent to Claimant a portion of Defendant Property, a total of exactly $22,000 was lent to Claimant. None of the short, identical *Sworn Statements*, however, nor Claimant's opposition or supporting statement of facts, address the amounts to be repaid to these third parties after Claimant allegedly "invested" their money in a gambling venture. In other words how much did the other co-defendants gamblers earn with their $22,000 investment from the $96,822.00 hidden underneath the mailed comforter. (See discussion infra.)

clarifies that, even if Claimant did mistakenly rely upon letters sent to him by Customs and Border Protection ("CBP") regarding his options for either attempting to reclaim or abandoning Defendant Property, CBP is under no obligation to advise Claimant as to what procedures to follow once judicial proceedings, such as the instant action, are underway.  Further, Plaintiff asserts that not only is the filing of an administrative claim not the equivalent of filing a judicial forfeiture claim, but also that CBP never represented that they were equivalent actions.  Plaintiff also notes that Claimant has been represented by counsel in the instant action, so his attempts to claim good faith lack of knowledge as to the deadline to file his claim are "disingenuous at best." Additionally, the United States argues that the untimely verified claim now submitted to the Court as an attachment to another filing still fails to specifically identify the third party individuals who allegedly have an interest in Defendant Property.  Thus, Plaintiff asserts that Claimant lacks both statutory and Article III standing as he has failed to "identify the person who entrusted him with the money" and has not "state[d] his authority to file a claim on [the] behalf of another."

Because the Court's analysis herein depends in part upon the timing of certain entries on the docket of the instant case, the Court finds imperative to state at this time the entry of several pleadings, motions and orders on the docket.  On October 10, 2006,

4

Plaintiff in the instant case entered its *Complaint for Forfeiture in Rem* (Docket No. 1). On that same date, Plaintiff moved the court for issuance of a warrant in rem as to Defendant Property (Docket No. 2), which the Court granted on October 17, 2006 (Docket No. 3). Plaintiff also moved to seal this case on October 16, 2006 (Docket No. 5); Plaintiff subsequently moved to unseal the case on April 23, 2008 (Docket No. 6), and that request was granted on November 21, 2008 (Docket No. 7). On January 12, 2009, Plaintiff informed the Court that a Notice of Forfeiture regarding Defendant Property had been posted on the official website for thirty (30) days, beginning on November 25, 2008 (Docket No. 8). On February 22, 2009, Claimant's counsel was served with the *Complaint* in the instant case and on May 21, 2009, Claimant himself was served (Docket Nos. 9 &10). On July 23, 2009, counsel for Claimant entered a *Notice of Appearance* (Docket No. 11) and requested an extension of time to respond to the *Complaint* in the instant case. The Court granted this extension until August 21, 2009 (Docket No. 12) and found as moot an identical motion filed by another counsel for Claimant (Docket No. 14). On August 21, 2009, Claimant filed an *Answer to the United States' Verified Complaint* (Docket No. 15); however, Claimant failed to file a verified claim along with this answer.

On September 4, 2009 Plaintiff filed a *Motion to Strike Answer* (Docket No. 16). In this motion, Plaintiff argues that, as neither

Claimant nor other possible claimants previously filed a verified claim to Defendant Property either within the statutory period or within the extended time-period approved by the Court, Claimant's *Answer* should be stricken from the record. On November 10, 2009, the Court held a Scheduling Conference in the instant case (Docket No. 19), at which the Court granted Plaintiff a period of time in which to file a dispositive motion and Claimant/Defendant Property a period of time in which to oppose. On November 12, 2009, the Court found the motion to strike moot (Docket No. 20) per the minutes of the Scheduling Conference. At this time, and as a preliminary matter, the Court recognizes error in its resolution of the motion to strike.  It should have stricken the answer at that time for failure to present a timely verified claim to Defendant Property.

## I. FACTUAL BACKGROUND

When analyzing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Cadle Co. v. Hayes, 116 F.3d 957, 959-60 (1st Cir. 1997).  However, the Court will not consider hearsay statements nor allegations presented by parties that do not properly cite to the record.  *See* L.Civ.R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not

specifically referenced."); *see also* <u>Morales v. A.C. Orssleff EFTF</u>, 246 F.3d 32, 33 (1st Cir. 2001)(finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate).  Thus, only material that "herald[s] the existence of definite, competent evidence [which] fortif[ies] the [party's] version of the truth" will create a factual dispute for the purposes of summary judgment.  <u>Vega v.</u> <u>Kodiak Caribbean, Ltd.</u>, 3 F.3d 476, 479 (1st Cir. 1993).  Although the Court is under no obligation to hunt for evidence in the record which parties do not cite, out of an abundance of caution, because the parties made several errors which were easily ascertainable from a review of their respective statements of fact and supporting evidence, the Court reviewed the entire record in order to accurately construct the following statement of facts.  *See e.g.* L.Cıv.R. 56(e).

On September 30, 2005, during a routine inspection at the United Parcel Services ("UPS") facilities located in Ponce, Puerto Rico, the agents of the CBP found a package with no return address. The package was delivered from the State of New Jersey and was addressed to Marilyn Madera, at Barriada Maldonado, Sector Los Chinos, No. 834, Penuelas, Puerto Rico. The contents of the package, according to the shipping declaration, were one comforter, valued on $50.00.  Upon inspection of the package, CBP agents found bundles of US currency in denominations between $1 and $20, hidden

within bedding items, as well as several air fresheners. The package was further evaluated by Customs, and its Immigrations and Customs Enforcement ("ICE") branch, at Ponce, Puerto Rico. After a thorough inspection, CBP agents established that the amount found in the package was $96,852.00.  Thereafter, the decision was made to seize the currency found, and to locate Marilyn Madera.  Agent Fombellidia did not find Marilyn Madera at the address included in the package.

On October 3, 2005, Claimant went to the UPS facilities in Ponce, Puerto Rico, to claim the package. When Madera was interviewed by ICE agents on October 11, 2005, she stated that she had no personal interest in the property, that the property belonged to Claimant and that she had agreed to receive the package as a favor to Claimant. On that same date, Claimant appeared at the ICE office in Ponce and asserted that the money represented gambling proceeds obtained while he was betting on boxing matches in New Jersey. He subsequently invoked his right to have an attorney present and the interview was terminated.

The Court notes that, according to the *Affidavit* filed by Agent Fombellida (Docket No. 1-1), an *Indictment* was filed on December 1, 2005, in the United States District Court for the District of Puerto Rico against several defendants, including Claimant in the present case, and that this *Indictment* included charges of drug trafficking  Moreover, no records were found of

possible accounts or lottery earnings, after having served Administrative Subpoenas upon several local government agencies.

On October 17, 2005, the Office of Field Operations, Fines, Penalties, and Forfeitures Office ("FP&F") of the CBP, sent a notice of seizure to the address provided by Claimant to the agents. Presumably in response to this notice of seizure, Claimant sent a petition letter to FP&F, dated November 30, 2005, in which he stated that the seized currency belongs to several gamblers who entrusted him with money to bet on a boxing match held in Atlantic City, New Jersey.

On January 9, 2006, an amended notice of seizure was sent by the FP&F to Claimant, as they had determined that $30.00 from the total seized currency ($96,852.00) was counterfeit currency. Additionally, FP&F informed Claimant that, in order to consider his November 30, 2005 petition, which FP&F considered untimely, Claimant would have to provide the names and contact information of the third persons who allegedly provided him with the money which he gambled. Further, FP&F notified Claimant that he had to produce documentation regarding the actual gambling, such as receipts, in order to properly support his petition. In this same letter, FP&F informed Claimant that a notice of intent to forfeit would be published for three consecutive weeks in the newspaper *El Nuevo Dia* during February of 2006. On that same date, FP&F sent Claimant another letter listing Claimant's legal options regarding the

9

seizure.

III.

On February 9, 2006, Claimant, through counsel Jedrick Burgos-Amador, requested that the administrative forfeiture proceedings be delayed, and requested a 30-day extension of time to provide the information regarding the allegedly legitimate source of Defendant Property.  FP&F granted this extension, stating that Claimant's new deadline for submission of a petition letter was March 10, 2006. On April 6, 2009, nearly a month after this deadline had passed, attorney Burgos requested another 30-day extension of time to reply as Claimant was still in the process of collecting sworn statements from the third party claimants/gamblers.  The requested extension of time was once leniently again granted.

On June 9, 2006, FP&F notified Claimant once again that a notice of seizure was to be published for three consecutive weeks in *El Nuevo Dia*.  The notice was to be published on June 21, 2006, June 28, 2006 and July 5, 2006.

On July 11, 2006, Claimant's counsel, Maria H. Sandoval, moved that the CBP refer the case to the United States Attorney's Office for further proceedings.  The following day, FP&F notified counsel that the matter had been referred to the Assistant Chief Counsel's office for their review prior to sending the case to the U.S. Attorney for court action. The described process resulted in the filing of the instant action.

10

### III. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c); *see* Celotex Corp. V. Catrett, 477 U.S. 317, 324-325 (1986).  Pursuant to the language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law."  Veda-Rodriguez v. Puerto Rico, 110 F.3d 174, 179 (1st Cir. 1997).  A fact is "material" where it has the potential to change the outcome of the suit under governing law.  *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).  A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence.  Id.  Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Id.

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts."  Cortes-Irizarry v. Corporacion Insular, 11 F.3d 184, 187 (1st Cir. 1997).

11

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor.  Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co., 116 F.3d at 959-60.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See* Poller v. Columbia Broad. Sys., 369 U.S. 470, 473, 82 S.Ct. 486 (1962); *see also* Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781 (1982); *see also* Dominquez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000)(finding that "determinations of motive and intent . . . are questions better suited for the jury "). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 85 F.3d 86, 95 (1st Cir. 1996). Also, pursuant to Garside v. Osco Drug, 895 F.2d 46, 50 (1st Cir. 1990) "hearsay evidence [is]inadmissible at trial [and] cannot be considered on a

12

motion for summary judgment." Moreover, the "District Court is not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory or imaginative statement made to the Court by a party." Torrech-Hernandez v. General Electric Co., 519 F.3d 41, 47 (1st Cir. 2008).

### IV. STANDING

It is well-settled that "[s]tanding is a threshold consideration in all cases, including civil forfeiture cases." United States v. One-Sixth Share, 326 F.3d 36, 40 (1st Cir. 2003). The First Circuit has outlined the unique circumstances surrounding standing in civil forfeiture cases as follows:

> [b]ecause civil forfeiture is an in rem proceeding, the property subject to forfeiture is the defendant. Thus, defenses against the forfeiture can be brought only by third parties, who must intervene. Generally, an intervenor must have independent standing if the intervenor would be the only party litigating a case.

Id. Standing in civil forfeiture proceedings thus has two requirements: constitutional standing and statutory standing. Id.

In order to show constitutional standing under Article III sufficient to challenge a forfeiture of property, a party "must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture." United States v. 116 Emerson Street, 942 F.2d 74, 78 (1st Cir. 1991)(internal quotations omitted). Thus, a claimant must show that he or she has a "facially colorable interest in the

13

proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the Court." Id. (internal quotations omitted). District Courts are cautioned not to "conflate the constitutional standing inquiry with the merits determination that comes later." One-Sixth Share, 326 F.3d at 41. Accordingly, the First Circuit has instructed District Courts that "the requirements for a claimant to demonstrate constitutional standing are very forgiving." Id. "In general, any colorable claim [to] the defendant property," including actual ownership or a possessory interest, will suffice to satisfy the constitutional standing requirement. Id.; see also United States v. $80,000 U.S. Currency, 189 F.3d 28, 35 (1st Cir. 1999)(noting that "courts have held that an allegation of ownership and some evidence of ownership are together sufficient to establish [constitutional] standing to contest a civil forfeiture").

The requirements for statutory standing in civil forfeiture proceedings, however, are not as lenient as the constitutional standing requirements. See e.g. One-Sixth Share, 326 F.3d at 40-41 (outlining the distinctions between the two aspects of standing for civil forfeiture proceedings). Statutory standing and intervention in cases involving civil forfeitures are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims. Id. Under 18 U.S.C. §983(a)(4), a claimant who wishes to contest the forfeiture of a defendant property must file a claim in the manner

14

set forth in the Supplemental Rules . . . not later than 30 days after the date of service of the Government's complaint or . . . not later than 30 days after the date of final publication of notice of the filing of the complaint." 18 U.S.C. §983(a)(4). Published notice is thus patently sufficient to meet the notice requirements of the statute. <u>United States v. One Star Class Sloop Sailboat</u>, 458 F.3d 16, 22 (1st Cir. 2006).

Specifically, in order to meet the statutory standing requirement for civil forfeiture claims, Supplemental Rule C(6) requires a party who wishes to enter the action as a claimant to submit a verified claim to the defendant property which sets forth "the basis for the claimant's interest in the property." <u>116 Emerson Street</u>, 942 F.2d at 78. Thus, Rule C(6) "forces claimants to assert their alleged ownership under oath, creating a deterrent against filing false claims." <u>United States v. $23,000 in U.S. Currency</u>, 356 F.3d 157, 163 (1st Cir. 2004). Accordingly, a timely verified claim is a "prerequisite to the right to file an answer and defend [a civil forfeiture proceeding] on the merits." <u>$23,000 in U.S. Currency</u>, 356 F.3d at 163. Thus, a party who fails to file a timely claim lacks statutory standing to contest a forfeiture. <u>United States v. One Dairy Farm</u>, 918 F.2d 310, 311 (1st Cir. 1990).

The First Circuit has only recognized exceptions to the general rule regarding technical compliance with the verified claim requirement where certain mitigating factors are present. <u>Id.</u> at

312. Such factors have included good faith efforts to file a claim on time and detrimental reliance on misinformation from a governmental agency. Id. Further, the First Circuit has recognized an exception where a verified complaint, which fulfills all the requirements of the verified claim, is filed instead of a verified claim. United States v. 1 Street A-1 Valparaiso, 885 F.2d 994, 999 (1st Cir. 1989).

Thus, where no mitigating factor is present and a purported claimant "files only an answer without a verified statement, the district court may strike the answer" as the purported claimant lacks statutory standing. $23,000 in U.S. Currency, 356 F.3d at 163.[3] In turn, the failure to file a verified claim "implicates Federal Rule of Civil Procedure 55, which governs the entry of a default judgment." Id. Under Rule 55, where no claimant properly files a verified claim to the defendant property within the allotted time period, the Court is entitled to enter a default under Rule 55(a) for a failure to "otherwise defend" the defendant property, as well as a default judgment under Rule 55(b)(2) upon motion by the plaintiff. Id.

The Court's inquiry here begins with Claimant's Article III standing, which Plaintiff disputes, alleging that Claimant's assertions are insufficient to show that he is the owner or

---

[3] It is for this reason that the Court admits error in its earlier decision in which it found Plaintiff's motion to strike moot.

possessor of Defendant Property for the purposes of Article III standing. Because of discrepancies in Claimant's allegations regarding the ownership of Defendant Property, including the perjury exhibited between petitioner's testimony during the criminal action (N. 2 & 3 of this order)and the *Supplemental Sworn Statement of Interest* attached to his counter statement of material facts, the Court's ability to analyze Article III standing in the instant case is riddled with questions which remain unanswered at present. In order to affirmatively decide whether Claimant indeed has standing in the instant case under Article III, the Court would have to make assumptions regarding the veracity of conflicting statements which the Court declines to make at present. As currently presented to the Court, the facts of this case surrounding ownership present a web of truth and contradictory lies which may eventually be resolved but may not be untangled at this time.[4] Even the proffered facts regarding possession in the instant case are undeveloped for the purposes of Article III analysis as it

---

[4] But the petitioner is perilously close to a perjury in the instant case as he denied originally any property ownership by any third parties and asserted "It was my money." Further, Colón Solis evaded a finding enabling a potential forfeiture in criminal case, U.S. v. Colón Solis, by stating that the property was exclusively his (See N. 1 & 2 infra) and now states that a portion of the property (not clarified how much) belongs to gamblers in the instant civil case. The court understands that he is stopped by collateral stoppel from assuming such contradictory position in order to prevail in both cases. (He avoided the forfeiture in the criminal case.) <u>Patriot Cinemas Inc. V. General Cinemas Corp.</u>, 834 F.2d 208, 211-213 (1st Cir. 1987) citing <u>Davis v. Wakelee</u>, 156 U.S. 680 (1895) and <u>Scarano v. Central</u>, 203 F. 2d 510 (3rd Cir. 1953) noting that such conduct amounted to "playing fast and loose with the courts" as said conduct of "intentional self contradiction is being used as a means of obtaining unfair advantage..."

is unclear whether Claimant actually intended to retain possession of the contents of the seized package once he mailed it to Madera without a return address or any other indication that he retained any claim to its contents.  Accordingly, the Court refrains from ruling at the current summary judgment standard whether Claimant has Article III standing at this time.

Rather, the Court shall address Plaintiff's other argument – that Claimant lacks statutory standing as he never filed a timely verified claim in the instant action. In order to have statutory standing in the instant case, Claimant must have filed a verified claim to Defendant Property either: (1) within 30 days from the final publication of the notice of filing the complaint; or (2) within 30 days of the date of service of the complaint." *See* 18 U.S.C. §983(a)(4).  On January 12, 2009, Plaintiff filed with the Court a notice that it had posted the Notice of Civil Forfeiture on the official forfeiture website for thirty (30) days, beginning on November 25, 2008. Thus, the final day when the notice was published was December 24, 2008.  Thirty days from that date was January 24, 2009.  Claimant did not file its verified claim prior to this date. Further, on February 22, 2009, Claimant's counsel was served with the *Complaint* in the instant case, and on May 21, 2009, it was served on Claimant himself.  Thus, the latest date upon which the 30 day period under 18 U.S.C. §983(a)(4) could conceivably have run out was on June 21, 2009.

Claimant made no appearance in the instant case until July 24, 2009, when his counsel entered a notice of appearance and requested yet another extension of time in which to file a verified claim. The Court acted generously in granting this tardy request and extended Claimant's already-expired deadline until August 21, 2009. While Claimant did file an *Answer* on that date, such answer does not comply with most if not all of the requirements for a verified claim. It does not assert alleged ownership under oath nor set forth the basis for claimant's interest in the property. *See* <u>$23,000 in U.S. Currency</u>, 356 F.3d at 163; *see also* <u>116 Emerson Street</u>, 942 F.2d at 78. Thus, the Court can not find that this filing may be liberally construed as the equivalent of a verified claim in order to bestow statutory standing upon Claimant. Nor can the Court find that Claimant made a good faith effort to file a timely claim as Claimant's minimal efforts can neither be construed to be timely given their extreme tardiness, nor in good faith as, even at this late time, Claimant's still-hazy assertions of ownership and possession of Defendant Property rest in principal part on his own perjury. Further, Claimant has presented no evidence that he relied detrimentally on misinformation provided by a government agency. In reality, Claimant's only such argument is that a government agency should have played the role of attorney to him, advising him of further nuances allowing him to pursue a claim in federal court in which he was duly represented by two counsel at

19

different stages of the procedure.   Neither case law nor common sense support such a proposition.   Although Claimant finally **attempted to file a verified claim as an attachment to his statement of material facts** in January of 2010, the Court deems said effort, although mitigating by the attorney, late in submission under the law as the last extension, of the many granted, expired on August 21, 2009. No timely request for extension to file the claim was ever made neither by defendant himself nor by counsel in the instant case. *See e.g.* One Dairy Farm, 918 F.2d at 312 (finding that, where potential claimants failed to request an extension of time sufficient to allow them to file a verified claim, they lacked statutory standing to contest the forfeiture); *see also* $23,000 in U.S. Currency, 356 F.3d at 163.  Accordingly, the Court must find that Claimant in the instant case lacks statutory standing as he failed to file a verified complaint, or an equivalent document, within the time-period allowed, even after he was granted an extension of time by the Court.  As the Court finds that Claimant has no standing in the instant action, and as Plaintiff advances no arguments regarding the merits of Claimant's alleged case, the Court refrains from addressing any potential substantive merits of Claimant's case in this *Opinion and Order*.

In conclusion, because Claimant lacks statutory standing in

the instant action, the Court hereby **GRANTS** Plaintiff's *Motion for Summary Judgment* (Docket No. 30). The court, therefore, GRANTS the forfeiture of $96,822.00 to the United States and enters judgment for plaintiff, United States, for said amount.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of February 2010.

s/Daniel R. Domínguez
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE
